UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

   *Plaintiff,*

vs.                 Case No. 19-cr-146-wmc

KYLE A. RIGGS,

   *Defendant.*

## SENTENCING MEMORANDUM

  The Court should sentence Kyle Riggs to 96 months' imprisonment because his hands-on offense conduct makes him more culpable than a mere consumer of child pornography. Though the Court should impose more than the 60-month minimum, a 120-month sentence is too long. As appalling as Riggs's conduct is, it doesn't place him among those who've abused multiple victims for sustained periods of time. Double-digit years in prison are reserved for recidivating child-pornography consumers and those who have sex with minors. Riggs isn't a recidivist, and he's not had sex with a minor. To avoid unwarranted similarities and disparities, the Court should sentence him to eight years because it appropriately places him among similarly situated offenders.

### 1. Riggs may have had a grim childhood, but he's done little to mature into adulthood.

Riggs grew up among the working poor. His parents were alcoholics who argued frequently before they divorced. He recalls that from time to time his mother would get so angry that she would leave the home for days at a time. He also remembers that the divorce was contentious and included several court hearings. (*See* Presentennce Report, ¶ 71-75.) His mother's next marriage, to Mr. Breitkreutz, was even more volatile. Arguing and fighting were norms; the two "both went to jail for domestic-related incidents." (PSR, ¶ 76.) These altercations were physical; "their fights became violent, with the two punching each other, leaving bruises and marks on each other, and his mother being dragged around the house." (*See* PSR, ¶ 76.) As a commercial truck driver, Riggs's father wasn't around much during his childhood. They lost contact altogether for many years when his father and his new wife moved to Georgia. (*See* PSR, ¶ 78.) When his father was around, he punished Riggs harshly for relatively minor discipline problems. That is, "the discipline sometimes rose to the level of abuse," and Riggs "described being slapped and pushed around like he was another adult." (*See* PSR, ¶ 79.) His father also would "lock[] him in his room for hours on end." (*See* PSR, ¶ 98.)

Riggs had adjustment problems growing up. He was treated for ADHD and depression as a child, which included medication. (PSR, ¶ 96.) He took the

medication for years, but by high school he decided on his own to stop taking them. (*Id.*) Instead, he effectively chose to self-medicate. He began regularly using marijuana in his teenage years. (PSR, ¶ 100.) His heavy use continued for nearly the next 20 years. (*See id.*) He began drinking at age 17. (PSR, ¶ 101.) From the start he was a problem-drinker and he's been an alcoholic for years. (*See id.*) He was able to rationalize his substance abuse because "it has not caused him problems as far as legal issues or fights." (*See id.*)

Perhaps Riggs's substance abuse didn't cause "legal issues or fights," but its advent was contemporaneous with his dropping out of school. (*See* PSR, ¶¶ 101 & 105.) His problems with anger would lead to his just leaving school. He completed three semesters of high school, taking 19 classes but passing only 1 of them. (PSR, ¶ 105.) Riggs may not have much of a criminal record, but neither has he shown much ambition. No doubt, he earned an HSED. But he lived with his mom until he turned 21. He moved out and had six-year relationship with Ms. Hohn, which was a step towards adulthood. (PSR, ¶ 81.) At the same time, he was a good worker, but he would experience periods of under- and unemployment. (*See* PSR, ¶ 107-109.)

The years between the break from Ms. Hohn and Riggs's arrest have been a dark time for him. (PSR, ¶ 95.) He's experienced thoughts of self-harm. (PSR, ¶ 99.) He didn't ask for help from anyone, and he still finds it difficult to talk about

3

himself and his feelings.[1] KV1 describes him "as a bad person who smokes pot and relies on others to buy him beer and cigarettes because he would not get a job." (PSR, ¶ 36.) That's a fair, if incomplete, description of Riggs.

### 2. A 5-year sentence wouldn't be sufficient, but 10 years would be too much.

If this were just a straightforward distribution case under § 2552(a)(2), then a 60-month sentence would be appropriate. Riggs has no criminal history. But the count of conviction doesn't drive the offense conduct here. At all. Instead, it's the three KV1 incidents (the park, the car, and the photos in the garage) plus his communications with the undercover officer. (*See* PSR, ¶¶ 8-18 & 32-37.) Five years doesn't account for such serious conduct.

The guidelines don't fix this problem. Riggs's rage is a perfect example of the sex-offense provisions' uselessness. His offense level is 40, which puts him among murderers. He doesn't belong with murderers, nor does he belong with many sex offenders who have come before this Court and have lower offense levels. His conduct is serious, but it's nowhere near to anything requiring 292 to 365 months in prison.

Riggs is not among the most egregious offenders. Though the three KV1 interactions are each harmful to the minor but in different ways. The only "good" thing to be said about Riggs's conduct with the minor is that it isn't among the

---

[1] *See* Statement of Mr. Riggs, attached as Exhibit A.

4

most egregious abuse cases the Court sees. It's less horrendous than what would typically earn a 10- or 15-year sentence. The communications with the undercover make matters worse because it shows an abiding interest, if not willingness, to commit contact-offenses with minors. He planned in-person meetings with the undercover, but he never was able to go through with it.

But Riggs's offense-conduct's aggravating factors don't place him among the more serious contact-offense defendants. No doubt his criminal impulses have persisted for about three years now, which suggests his problem isn't an episodic one that will go away on its own. On the other hand, despite having these impulses, he never graduated to the more monstrous contact-offenses the Court unfortunately sees frequently. It's likely he hasn't graduated to that kind of conduct because he has a growing awareness of how damaging his conduct can be to minors. (*See* Exh. A.) As he notes, this experience has forced him to face parts of himself that he'd rather not look at. But he knows that the introspection is necessary for his ultimate success, even if he isn't well-versed in how sex-offender therapy works. (*See* PSR, ¶ 88.)

So, a 96-month sentence recognizes the severity of Riggs's offense conduct without situating him among more culpable defendants. It also has the further benefit that KV1 will be an adult by the time he's released from prison. (*See* PSR, ¶ 32.) It won't undo the damage he's done by any stretch. But his detention until

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

after she's become an adult is some mild peace of mind that the Court can provide her and her mother.

A final word. Riggs's pretrial confinement has been a lengthy one, coming up on nine months; he was originally scheduled to be sentenced back in March. The coronavirus pandemic caused the delay. Meanwhile, he tested positive for COVID-19, though he never had symptoms of infection.[2] His quarantine period was even worse than the lockdown he had been experiencing. It's been a rough start to a very long prison sentence.

Dated at Madison, Wisconsin, this 22nd day of June, 2020.

Respectfully submitted,

Kyle A. Riggs, Defendant

*/s/ Peter R. Moyers*
Peter R. Moyers

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
peter_moyers@fd.org

---

[2]     Riggs's test results are attached as Exhibit B.

6